Good morning. We have two cases this morning. First is number 15-3040 Robinson versus Danberg at all. Is it Mr. Felice or Felice? Felice and Mr. Hamlin. Whenever you're ready. May it please the Court. Good morning, Your Honors. David Felice of Bailey and Glasser in Wilmington, Delaware, on behalf of the appellant Gregory Robinson. Welcome. Do you wish to reserve any time for rebuttal? Yes. With the Court's permission, I'd like to reserve three minutes for rebuttal. No problem at all. The facts and law at issue in this appeal present this Court with what I believe is the first opportunity to address two very important issues. First, this case presents an opportunity for the Third Circuit to apply the Supreme Court's recent Kingsley decision to Mr. Robinson's pre-sentence claims. You've got nine claims here. Why don't you start with the ones that you think are the most favorable for a possible remand or reversal? Certainly, Your Honor. The excessive force claims, both pre-sentence and post-sentence, present the most favorable facts for a jury to enter an award for my client. Now, the excessive force actually are also pre-trial, are they not? Yes. There's four of them? Yes, Your Honor. There's one pre-trial. Removal of handcuffs, flooded cell, cleaning the blood and urine spray. No, Your Honor. We characterize the toilet water, the blood, and the urine as conditions claims. Yeah, I'm sorry. Right. Excessive force is the 620-08. That's the removal of handcuffs. Yes, Your Honor. You're right. Mr. Robinson alleges that on June 20, 2008, Mr. Beckles injured his left hand and ankle when he intentionally closed a steel door on Mr. Robinson's foot and injured his left hand by violently jerking handcuffs. This claim, this is a claim that appellees did not include in the original motion for summary judgment or the opening brief before the district court. Only in reply did appellees argue that Beckles' incident report demonstrated that Robinson yanked his hand away from Beckles, quote, which likely accounts for any injuries noted in the medical report's plaintiff's cites. Shouldn't we make something, however, of the very minimal injuries that were experienced here? And aren't we, under the jurisprudence, permitted to give consideration to that? I'm sorry, Your Honor. What was that last point? Aren't we, under the case law, permitted to give consideration to the minimal injuries experienced? Your Honor, to answer that point first, yes, you're allowed to give consideration to what you believe are minimal injuries. That's one of a list of factors that this court and the district court can consider as to whether or not it's objectively de minimis. It's not dispositive, however. And more importantly, I would submit that the injuries were not de minimis. They were not minimal. What was – how significant were the injuries? So, Your Honor, immediately after the incident, he was seen by the medical personnel at the prison. Contemporaneous medical records – But he had abrasion and edema on his left hand. Correct, Your Honor. He was given a tetanus shot, antibiotic, and pain medications. Yes, Your Honor. So it showed soft tissue swelling without fracture or dislocation and no fracture or dislocation of the left ankle. Yes, Your Honor, and that was one month later. One month later, there was still swelling on his wrist. And here's why it's important with regard to the foot, Your Honor. In that x-ray, he's complaining of injuries, okay? So he's seen by a doctor. They prescribe x-rays. Let's find out what's going on. Here's why that's important. One, there was still swelling on his left wrist. When Mr. Beckles yanked those handcuffs back, causing the teeth to dig into his wrist, one month later there was still swelling. Counsel, you're correct that the district court did not go through each of the nightly factors. But when we take account of the level of the injury and the explanation that is provided in the record as to the reasons it was needed for security, for that use of force, why can't we just conclude that the only reasonable inference that can be drawn from this record allows us to affirm, that is, that in balancing those factors, a reasonable jury can only reach one conclusion? Because Mr. Robinson presents a contrary version of the facts. He said he backed up to the flat. He backed up to the flat of a closed maximum security door to allow Mr. Beckles to remove the handcuffs. Mr. Beckles, in his incident report, says he was trying to get away. Mr. Robinson doesn't say that. He says, I was backing up. There was animosity because I wouldn't take a shower in a shower that had feces in it, and I had to be walked around. That's what caused Mr. Beckles to be upset. So are you arguing for reversal, or it is really all that would be appropriate for us at this stage, even if we thought you had put forward some genuine issue of disputed fact here as to that element, to remand for rebalancing under the nightly factors? Your Honor, at the very least, we'd ask for a remand to rebalance under those factors. But I think the record as presented allows us to say the injuries were not minimal, number one, and there are reasonable inferences that can be drawn from the trial record that he wasn't resisting. And getting back to Judge Ambrose's point as to injuries, the x-ray one month later did not show any arthritic conditions in his left foot. The second x-ray about a month after that did show arthritic conditions present. So he's been complaining about what happened on June 20th. There were mild osteoarthritic changes in his left foot. Yes, Your Honor. It goes from zero to mild. So in this case, he hit the back of his foot while closed. The back of Robinson's foot was hit while the door was being closed. That apparently didn't cause any immediate injuries, did it? Well, he says he had immediate injuries to his left foot. Yes, Your Honor. What evidence did he put that contradicted the fact that he was being uncooperative at the time? He submitted that he did not want to go to the shower that an inmate allegedly defecated in the night before. Once that was over, he was brought back to his cell. So that incident, that mishap, as I said in a brief, was over. He was just returning to his cell. We would submit that an inference can be drawn that Mr. Beckles was agitated, he was irritated, and that's why he did what he did. Why don't you go to the other questions on this? Any further questions on number one? Why don't we go to the conditions of confinement claims? Sorry, just before we leave this topic of excessive force, can you address briefly why you think that there is even sufficient evidence that has been put forward as to him being struck while handcuffed? The laceration on the tongue? Yes. And what, if any, evidence in the record there is that that was even caused by this alleged slap? No, I have that as post-sentencing. Is that another claim, claim five? Yes, that's a post-sentence excessive force. Okay, let's go with that then. Downing hit him in the face. Yes, Your Honor. And the court decided the excessive force issue, but apparently didn't even decide due process. Is that correct? No, Your Honor. It's the reverse. It decided due process? There were two claims that resulted from the September 14, 2009 incident. The first claim was an excessive force claim. That was in complaint paragraph 107 of Mr. Robinson's pro se complaint. The second claim was paragraph 108, which was a due process claim, resulting from what he alleged was a false write-up. We did not appeal that. That's the only claim that the district court disposed of at summary judgment. The reason why they didn't dispose of the excessive force claim is because the appellees didn't move for dismissal. But the rationale that the district court relied upon, that is, there was no genuine issue of material fact here, no dispute, that would apply just as well to the excessive force argument on these same allegations. I don't believe so, Your Honor. There are two separate claims. One is a due process claim and one is an excessive force claim. Well, what is there in the record that would support there being either sufficient evidence to remand for the district court's consideration or, as I think you're arguing, that there is a genuine dispute here as to material facts?  There is, Your Honor. Let's assume they had moved for it, moved on it, and the court adjudicated it. Here's why the court should vacate that judgment and remand it for trial. Mr. Robinson testified that while he was handcuffed and walked out of his cell behind his back for a routine cell shakedown, which is that's normal course, either handcuffed, downing struck him in the mouth and bloodied his lip and mouth. He continued by testifying that Major Scarborough, quote, came running down screaming and hollering and had, quote, Robinson, quote, taken down to see the nurse. But even by Robinson's account, this was not a punch, was it? I mean, didn't Robinson himself variously describe this as a slap or a smack? Yes, Your Honor. In fact, he described it as an open hand, not a fist. Yes, Your Honor. That was at his deposition. That matters, doesn't it, in terms of the severity of this assaultive behavior? Well, I think, yes, that's one consideration the court can look at. But what's more important, that it required immediate attention, immediate medical attention. And Mr. Robinson's story is corroborated by the medical reports that same day. And it's also corroborated by the log books. But the medical reports just indicate that there was a small laceration on his tongue. There's nothing about, you know, a cut or a bloodied lip. And there's nothing that you've put forward as to any witnesses, even a deposition of Scarborough. It doesn't appear in the record. Well, Your Honor, we have Mr. Robinson's deposition. Ms. Downing said she didn't do it. So you have a dispute of fact there. The inferences that can be drawn from the entire record is that he wasn't posing a threat, he had his arms handcuffed behind him, and Downing hit him, bloodied his lip. Why don't you turn to the macing that took place on July 10th of 2009? Yes, Your Honor. Your Honor, I think that, in my opinion, that the record is fairly well developed that there's a disputed issue of fact as to whether or not Ms. Diale applied mace to Mr. Robinson while he was locked behind a maximum security door, posing no threat. That's number one. You know, if the Court has any questions as to what evidence can and what inferences can be drawn from the evidence, I'm happy to address that. Yeah, and you also have the declarations of Evans and Jackson. Yes, Your Honor. We have Mr. Robinson's testimony. We have various affidavits that say Ms. Diale maced him. There is one disagreement years later when this one individual signed an affidavit saying he was maced through the food flap, not under the door. That doesn't magically erase the fact that he was maced. It's just a question of credibility or, more importantly, recollection of the facts. What do we do with the fact that he doesn't even report any injuries, the first three grievances that he files here? It's not until the fourth that there's anything about injury from macing. Well, he immediately grieved the macing and asked for medical attention. He wasn't given medical attention. And that's why it's important to show that this was punitive. He was maced right after Mr. Lankford was maced. And if you look at the logbooks, the logbooks say they turned off the ventilation. So he's being maced, all the ventilation's been turned off, and he's stuck in this small maximum security cell with mace overnight. And he doesn't receive medical attention. That's punitive. They did that to punish him. If you want to finish up with that, then I have one more I definitely want you to cover. Yes, Your Honor. And I think there's a fairly well-developed record there. I think what the court has to grapple with here is the district court's finding that macing someone behind a closed maximum security prison door when he wasn't posing any threat at all, is that objectively de minimis? I would submit it isn't. I would submit at the very least it goes to a jury for the jury to make that decision. Here the district court made its decision by itself and held that it was objectively de minimis. I think the court should vacate that decision and remand it for a jury trial. Could you turn to the allegation concerning snitch being a snitch? Yes. So the snitch claim is a post-trial, what was left over from the screening decision. A post-trial, what we say, is a conditions claim. Mr. Robinson testified at his deposition that he has been subjected to being called a snitch since 2008. The appellees subject to this claim are Mr. Beckles, again, Ms. Downing, again, and correctional officers Henry and Moore. Mr. Robinson testified at his deposition that the snitch name calling was constant and led to other inmates threatening to kill him. He repeatedly raised these concerns with the Internal Affairs Department, specifically Mr. Boney, but to no avail. These allegations of being called a snitch are corroborated by other inmates' declarations. Although the names don't all match, the only one that matches, it seems, is that of Henry. You've got Harris and Young in one, and then Foraker and, well, maybe Harris. Harris is maybe in both.  Yes, Your Honor. Are the two that match based on what he said and based on the affidavit? Yes. Okay. Counsel, for the very high threshold that needs to be met for an Eighth Amendment conditions of confinement claim, we need not only have something that shows deliberate indifference or risk in the deliberate indifference prong, but also that it's sufficiently serious, objectively sufficiently serious. You have alleged here that he received over 200 inmates have turned against him, that he's received numerous death threats. What support is there for that in the record? With that and with his own deposition testimony that suggests that he has never had even one, one-on-one altercation with another inmate about this, and the two affidavits that have been put in reflect only that those inmates, those two inmates heard staff call him a snitch, but not that there were threats against him by other inmates, that they observed any, you know, attack or sort of dangerous activities around him as a result of this. With simply the allegation that they have made such, that the officers have made such allegations and nothing more, how could we say that this very high Eighth Amendment threshold of objectively sufficiently serious has been satisfied? Well, I think based on Mr. Robinson's testimony himself, based on the affidavit testimony that, you know, after he'd been called a snitch, the other inmates don't look favorably on him. We also have Mr. Where is that affidavit testimony? Because when I I believe it is in Mr. Pierce's or Mr. Irwin's affidavit at the, they both appear from Joint Appendix 66 through 68. J66 simply says that Mr. Pierce has heard that he has been labeled a snitch by staff, not by other inmates. And at J68, Mr. Irwin reports that these officers have called him a snitch several times. But there's no reports there, nor is there any report even in Mr. Robinson's own deposition that he's been subject to any kind of harassment or threats or any injury whatsoever to substantiate this. Well, Mr. Robinson testifies at pages 90 to 92 of his deposition that he's heard threats that someone's going to kill him. So he did testify to that. And Mr. McRainer, our expert, I see my time is up. No, go ahead and finish that. Mr. McRainer, our expert, he was a captain at the Delaware Department of Correction. After 22 years, he retired. He says being labeled a snitch in prison presents a risk of very serious injury from other inmates. I'm not going to get another inmate to say, oh, he's a snitch, I want to kill him. It's what I can only present to you what Mr. Robinson's heard and what the other clients have heard as to what risks he faces. And also to the point, he was in maximum security for most of this time. He's only allowed out of his cell one hour a day. So the ability for other inmates to act on that is limited. With respect to what Mr. Robinson has produced concerning the characterization of him by someone that he is a snitch, what in the record shows that that characterization was made of Robinson by prison personnel, a guard or whomever, to inmates? That's essentially what he has to show, isn't it? Yes, Your Honor. And what in the record demonstrates that? I believe it's Mr. Robinson's deposition himself, his own deposition. I'm not asking you what form or medium in which he expressed this allegation. I'm asking you for the specifics of what he said. How does he point to, A, said, I'm a snitch, to B? Where has he said that? I don't think it's a discreet conversation. I think it's more they're yelling it on the tier. They're saying, you know, Robinson's a snitch. It's not discreet conversations between correctional officers or one-on-one discussions with other inmates. It's vocalizing that on the tier. And he's heard that? Yes, Your Honor. All right. Thank you. We'll get you back. Thank you. Mr. Hanlon. Good morning, Your Honors. May it please the Court, Joe Hanlon, on behalf of the nine individual officers that have been sued by Mr. Robinson. I would ask at the outset, although you can end up, there will be questions on others, allegation of hitting in the face by Downing, macing in the cell by D'Ali, and the snitch allegations against at least two or three, maybe four officers. Why don't you start with the slap in the face by Downing? Yes, Your Honor. I mean, at the very least, doesn't that call for a remand because the Court didn't deal with the excessive force? I don't believe so, Your Honor, and here's why. The Court dealt with it, I think it's pages 16 to 17 of the Court's pretty thorough opinion, addressing a lot of claims brought by Mr. Robinson. And I think the appellant's capitalizing on the fact that the title is due process. Why did the Court deal in its decision with the excessive force? It did deal with due process. Well, I believe it's not crystal clear, but I believe implicit in the Court's holding, pages 16 to 17 of the opinion, the Court addressed the excessive force claim. There is a title in that section of the opinion that does say due process. It makes it a little unclear. Your Honor, in our briefing, we try to make the point as a general matter that this case is unfortunately not too unique, but it is unique. The Court says in 16 and 17, due process slash post-sentence, plaintiff claims his due process rights were violated on the two days of September 09 when defendant Downing allegedly filed false reports to cover the fact that she hit him in the mouth and caused injury. Where does that deal with excessive force? Well, she discusses the fact that she hit him with a closed or open fist. She notes that he was taken to the infirmary, notes that Downing denied slapping him, and then finds that the disparate versions of the incident do not create a genuine issue for the jury. It's not as clear as I think one would desire, but I understood that as addressing the excessive force claim. I think, at worst, from my perspective, Your Honor, the Court could remand for further elaboration. I think that's not, I think the Third Circuit could rule on the record that the force used was de minimis and that would be an efficient use of judicial resources rather than have a second opinion be written. But I think, you know, backing up just a little bit, and this is why we try to point this out in our opening brief, we were dealing, Judge Robinson was dealing initially with a case that had 47 defendants in it. Only 209 paragraphs in the initial pro se complaint, but almost every single paragraph alleged a separate cause of action. Some of them related to each other, but by and large, it was almost 200 claims in a case, a veritable diary of daily unconstitutional violations, according to Mr. Robinson. She screened out 37 of 47 defendants and we were left with 10. There were still a large number of claims that throughout the case, after Mr. Fleece was appointed, claims would drop off. Four days before summary judgment briefing was filed, eight more claims were, we were informed that eight claims were not going to be pursued. Claims were dropped during summary judgment. Claims were even dropped on appeal. We were left with this ever-changing, amorphous, numerous of claims. And some of those, you said 10, I thought there were nine, but some of those appear to be concerning. So, for example, let's just turn to one that I find particularly concerning, the macing of the cell by the alley. Yes, Your Honor. Just to be clear, and I think we said this in the briefing, that by and large, I think for all the claims, the nine defendants and the appellees in this case deny doing what they were accused of doing. But, of course, for summary judgment purposes, we're stuck with Mr. Robinson's version of it. And that's the problem. Right. I mean, the gratuitous use of mace on an inmate who's locked in his cell, doesn't that amount to excessive force? Well, first I would say, Your Honor. At least theoretically. It could. It could under different facts and circumstances. I would say that. Well, let's assume that the prisoner is not acting out in any way, does not constitute a danger to anyone or himself. Now, assuming those facts, is there any legitimate, penological reason for gratuitously, as Judge Ambrose has characterized it, spraying mace into a cell? Absolutely not. It's reprehensible conduct. It should be, the officer should be disciplined, if not fired. Perhaps it's a state law battery, and depending on the detailed facts and circumstances. So if that's what is averred here, shouldn't that be enough to get Mr. Robinson by? Well, no. I think what has to happen is there has to be in this record a little bit more detail on exactly what happened. And I don't mean to split hairs. How much? How much is a little more detail? Well, what we do know is that some amount of capstone, we don't know how much, was sprayed under a door, and according to Mr. Robinson, it hit his shoe and he wasn't allowed medical treatment. There's objective evidence of that in the discoloration of the shoe and some concern on the part of the investigator. There are affidavits of two inmates, and although they certainly have inconsistencies in those affidavits, they both corroborate the basic fact of macing around the same incident. And we've got his grievances contemporaneously. Indeed, nothing from the internal affairs investigator, Boney, necessarily contradicts that. And the ventilation turned off contemporaneously. That seems to provide corroboration. Particularly relative to the evidence available for some of these other claims, why isn't that proof positive that there is a disputed issue here that warrants jury attention? There are dispute effects. As to the ventilation, I think if you look at Mr. McRainer's testimony, plaintiff's expert, he agreed that the ventilation was turned off because there had been a previous documented incident of capstoning of an unruly inmate, Mr. Langford. And that's why the ventilation was turned off, so as not to spread the fumes. Mr. McRainer testified to this. Likewise, there was another second entry in the logbook of ventilation being turned off, which Mr. McRainer seemed to admit in his testimony that's in the record, that that's indicative of there not being a second capstoning, at least one that the officials on the ground would have acknowledged in any way. I mean, I understand the argument that if this was an officer that was off the handle doing something, she absolutely shouldn't have been doing that. But the alleys incident report didn't even mention Mace, right? No. She denies doing this, Your Honor. Later on. I would say to the affidavits, I mean, one says it happened in a completely different year. The other one doesn't say when it happened. There are discrepancies about whether it was through the flat Mr. Robinson said was under the door, Mr. Boney notes in his report that Robinson said it was under the door. I think Judge Robinson appropriately analyzed what evidence was there. Well, what Judge Robinson said is that even if Mace was used, the use of force here was objectively de minimis. That's a quote. And at the outset of this discussion on this point, you said that if you spray Mace into a closed cell with the ventilation turned off, you've got a problem. Well, first of all, Your Honor, I don't know the record is clear that the ventilation was turned off at the time that Sergeant D'Ali allegedly sprayed Mace. There's some evidence of that. Okay. The point being if you spray it into a cell with a person already inside, not a threat, that that is a problem. And so it can't be necessarily de minimis, can it? I said under certain circumstances I could see that absolutely not being de minimis use of force. So under certain circumstances, that means it's not objectively de minimis because under certain circumstances it may not be objectively de minimis. I would just say, Your Honor, on this record, there's not enough evidence in the record that shows that this was above the de minimis standard. There are cases. What more evidence do you need? You've got Robinson, you've got Evans, and you've got Jackson. Well, for example, Your Honor. And, if I may, you have not only that evidence that it happened, you have Mr. Robinson's testimony as its effect on him, don't you? That he was uncomfortable and he wasn't allowed to stand up. And I think he needed a towel wrapped around his face. Isn't that in the record? Yes, Your Honor. So we know more than just the fact that Mace was sprayed. We know that it was sufficiently, at least averted to have been, sufficiently noxious to Mr. Robinson that he was placed in some discomfort and took measures to try to alleviate that discomfort. That's true, Your Honor. I just would say that there is some difference between a constitutional claim and a battery, something that's deserving of discipline. I submit that the record in this case shows that Judge Robinson was not incorrect in granting summary judgment. Mr. Felice did not cite any cases that had remotely similar fact patterns. Judge Robinson was not incorrect in deciding at summary judgment what we're seeming to say, or may perhaps even agree on, is a material issue of fact. The alley said later on she didn't mace him. The incident report doesn't say anything. You have the inmate and two others saying that he was maced. Why is that not a material issue of fact? I think she went through all the evidence, and I think if you find that the force was not de minimis, then we do have a disputed material fact for trial. I don't disagree with that, but Judge Robinson then said at the end of her analysis, and even if this did happen according to Mr. Robinson's version of events and all his evidence, I find that the force under this record was de minimis. Okay. Your Honor, I did not say. And that's the point that we talked about just a moment ago, is saying that at the outset, under certain circumstances, at the very least, it perhaps is not objectively de minimis. Yes, but district courts frequently decide whether or not force rises to the level that's sufficient to go to a jury, even under disputed facts. Because that particular calculus is really a question of law. It's not a question of fact. Yes, I mean, if you look at Hudson v. McMillan, you had egregious alleged uses of force, punching, kicking, and what the lower courts there said, or at least one of the lower courts said, well, the inmate was lucky enough to not sustain any serious injuries, and therefore it's not a de minimis violation. And the Supreme Court rightly said, you know, it should not depend on whether there's severe injury. You do look at the force that's used. And here, although we disagree it happened, it's completely inappropriate to ever spray capstone or any chemical agent under an inmate's door who is secure, if there's not some circumstances that call for it. In the time you have left, why don't you discuss the snitch allegations? I think Judge Krause hit upon some of this, Your Honor. If you look at the testimony, particularly the page, I think it's a page or two, that's after the testimony is quoted in the reply brief, and that is JA-141. And I think the Court is aware of this. Mr. Robinson was asked for a single name of any inmate who was ever turned against him, and he couldn't give one example. He says 200 inmates were turned against him, yet he was deposed in 2012. And this claim, I think, stemmed from, well, he said since 2008 this has been happening, so since he was incarcerated. What you have here is you have Robinson stating that Henry Harrison Young called him a snitch in earshot of other inmates. You have an affidavit from a prisoner noting that Robinson, quote, has been labeled a snitch, close quote. You have a sworn declaration from another prisoner claiming that Henry Foraker and Harrison called Robinson a snitch several times. And then McReener, Robinson's expert, explained that a correctional officer calling an inmate a snitch can place the inmate at serious risk of bodily injury. It ain't good. And I ask Mr. McReener, the danger of doing that is if you do it in the presence of other inmates. If the officer says it to the inmate in closed quarters, that's improper and not professional. And didn't even Beckles agree that an inmate labeled as a snitch would be at risk of attack? We don't disagree with that, Your Honor. That's clear in reality and in the cases. But it's telling that in the evidence that was provided on this issue, one, the defendants are constantly changing. You look at his testimony. You look at the complaint. They're all over the place. It's just like Mr. Robinson's just waving his arm around, trying to point blame at anyone who has custody over him in prison. So they're constantly changing. Your Honor pointed that out. There's no specific facts. Not one single date where this has happened, not one single time where he was ever specifically put at risk. And he had been there for four years by the time he was given this testimony and his deposition. The one case, and now I understand it's a district court case, but the one case cited by the appellant, Blizzard B. Hastings, has the same exact kind of allegations, and the court granted summary judgment there. I think where you have some specific factual allegations against named defendants, and it's clear that it's done in the presence of other inmates, that's completely improper. Perhaps it's an Eighth Amendment deliberate indifference claim. I don't think this record supports it. But, in fact, the appellant has the burden to prove that Judge Robinson was wrong on this point, and I don't think they've met that burden on appeal. Counsel, can you also address briefly the Fourteenth Amendment excessive force claim regarding the injured hand and handcuffs, where the district court plainly failed to apply many of the nightly factors, and you don't address a number of them even in your brief. Why shouldn't, at a minimum, we vacate and remand for the district court to engage in the proper balancing to reach a determination of your nightly? Well, again, I see my time is up, so can I address that briefly? You're on our time. Again, I think you have to look at the context of this case, and that's why we try to provide that flavor in our briefing. But the bottom line is, and I think Judge Robinson recognizes this, and I think the record supports it on appeal, that the door was a swinging door, and Robinson claims that he tried to shut it on him and it hit his foot. We don't have any injury from that. We don't have any medical testimony, no medical expert in this case, tying osteoarthritic changes three months later to that. How old is the plaintiff? I think he's middle of his 40s, maybe. Everybody that age has a little bit of osteoarthritis. I've managed to avoid it so far. I didn't. But the hand in particular, I mean, even under Mr. Robinson's version of events, an officer pulled handcuffs off of him roughly. If this isn't the minimus force, I'm not sure what is. Those are not injuries you would expect to see every time an officer takes handcuffs off of an inmate, particularly where the inmate is already secured behind the door, is having the handcuffs removed through the flap. Well, I would suggest under Kingsley, Judge Robinson was entirely correct in crediting, not to the detriment of Robinson, but giving some credit to what the officer testified was the case there. But if that's the issue, then aren't we back to a credibility determination, conflicting versions and something that doesn't warrant just a remand but actually reversal? Not necessarily, Your Honor, because I believe that the district court can look at what an objective, reasonable officer would have done in that circumstance, including, and this is expressly from Kingsley, what that officer knew at the time. And he had a disruptive inmate who was about to have handcuffs in his cell as a weapon because one cuff was off and one wasn't, and he pulled on it and he cut him and bruised him. There was no dislocation. He was taken to medical. There was no break. There was no significant injury there. I think you look, you weigh the de minimis injury, not solely, but also with what happened there. And even under Mr. Robinson's version of events, he wasn't being cooperative, going to his shower. It doesn't mean that an officer should take his force against him later, but they weren't getting along under both versions of events there. And there was a scuffle getting these handcuffs off, and the versions of the story slightly differently. I think Judge Robinson was incorrect in granting summary judgment on that claim. Thank you, counsel. Thank you very much, Your Honor. Mr. Fleece. I want to address briefly three claims. The snitch claim, Judge Krause, you inquired as to the affidavit testimony as to threats and what was the result of that. On Joint Appendix 67, Mr. Pierce says, I know Robinson fears for his life and I would too if I had to go through what he is and has. The next page, Mr. Irwin's affidavit, he says, Inmate Gregory Robinson has stated to me, Daniel Irwin, that he fears for his life and safety. I would too if I was being treated the way he is. So right there you have corroboration of Mr. Robinson's testimony that people are threatening to kill me. And what inferences can we draw from that? We can draw an inference that there is a clear potential for, at least to go to the jury, as a post-sentence condition of confinement claim, being called a snitch puts him at risk. Although those statements don't appear to relate directly to the allegation of being called a snitch. Both of the affidavits describe other conduct, threats directly by the officers of what the officers are going to do to him. It's certainly not clear from the affidavits that their assertion of or bolstering that they credit his fearing for his life relates specifically to the snitch allegation as opposed to other conduct that they describe that the officers are engaged in. Yes, Your Honor. I think that Irwin's affidavit is a little bit more focused on dealing with the harassment and the name calling, the snitch calling. Mr. Pierce's affidavit is a little bit more broad. He does talk about the foreign objects in his food. So there is an overarching fear for his life, not only being called a snitch, but also, Arthur claimed, having foreign objects put in his food. With regard to the timeline of the macing, I think it's now clear that there's a disputed issue of fact. But here's why I think it's a slam dunk. Our affidavits, Mr. Robinson's testimony, were all put in before I even received the logbooks. The logbooks dovetail completely with our version of the facts. From the phone call that Mr. Robinson received, and it was cut short, to Greg Langford getting maced independently of this, the ventilation being shut off, and then we have after that grievances the next day. Not only on the 10th, but the very next day, he grieves on July 11th, why can't I receive medical care? So it's not what Mr. Boney says, uncorroborated. There's consistent contemporaneous corroboration of these events. I would submit it should go back for a jury trial. Thank you very much. Thank you to both counsel for well-presented arguments, and we'll take the matter on.